UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

– v. –

GAZMEND LITA,

          Defendant.

---

20 Cr. 660 (ALC)

**THE GOVERNMENT'S SENTENCING MEMORANDUM**

 

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Samuel L. Raymond
David R. Felton
Assistant United States Attorneys
    *- Of Counsel -*

The Government respectfully submits this memorandum in advance of the sentencing of defendant Gazmend Lita, currently scheduled for Tuesday, February 1, 2022 at 12:30 p.m. As set forth in the parties' plea agreement and in the Presentence Investigation Report ("PSR"), the defendant's stipulated Guidelines range is 6 to 12 months' imprisonment (the "Stipulated Guidelines Range"). For the reasons explained below, the Government submits that a sentence within the Stipulated Guidelines Range of 6 to 12 months' imprisonment, forfeiture in the stipulated amount of $111,704.94, and a fine within the applicable Guidelines fine range of $4,000 to $40,000, would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.[1]

## I.   BACKGROUND

### A. Offense Conduct

This case was investigated by the Federal Bureau of Investigation. The larger investigation centered around a series of illegal gambling parlors located in Brooklyn, New York. One of the illegal gambling parlors was called Sports Café, and was operated by Lita's co-defendants Ervin Makishti and Sokol Gjoni. Besides in-person gambling operations, such as electronic poker machines and a periodic poker game, Sports Café was the epicenter of an illegal sports book. Makishti was the main operator of the sports book, which he often handled from his home in Manhattan. Makishti took sports bets, including over the phone, and had workers at Sports Café enter the bets into a foreign-based sports gambling website. Makishti's sports gambling business

---

[1] The Government will submit a proposed order of forfeiture for $111,704.94, the stipulated amount agreed to in the parties' plea agreement, at the time of sentencing.

was quite profitable, so the owners and managers of other social clubs would take sports bets from their clientele, and convey the bets to Makishti to manage, via the website and various ledgers.

Lita, who operated a social club in New Jersey, was one of those other operators and managers. Lita took sports bets from his clients. Lita, or his salaried employee and co-defendant Smail Djokic, would convey the bets to Makishti, who would in turn have these bets input into the foreign website. Lita had a financial interest in the gambling operation's success and was involved in the sports gambling from at least June 2018 through at least December 2019. From ledgers regularly exchanged between Makishti and Lita or Djokic, Lita's profits varied by month (whereas Djokic was paid a more stable salary for his involvement), and the Government estimates that Lita earned approximately $6,000 each month, resulting in the stipulated forfeiture amount of $111,704.94.

### B. Lita's Guilty Plea and the Presentence Investigation Report

On September 8, 2021, Lita pleaded guilty pursuant to a plea agreement to Count Three of the Indictment, charging Lita with, from in or about 2015 up to and including in or about March 2020, conspiring to transmit wagering information, in violation of 18 U.S.C. §§ 371 and 1084. Of the 16 defendants charged in this case, Lita was the first defendant to plead guilty and is on track to be the first defendant scheduled to be sentenced. Under the plea agreement, based on an offense level of 10 and criminal history category of I, with zero points, the defendant's agreed upon Guidelines range is 6 to 12 months' imprisonment and the Guidelines fine range is $4,000 to $40,000.

The U.S. Probation Office recommends a non-custodial sentence of 3 years' probation with 3 months' home detention, six months of location monitoring enforced by electronic monitoring,

forfeiture of the stipulated $111,704.94 amount, and a bottom-of-the-Guidelines fine of $4,000 to be paid immediately. PSR at 27-28. In support of its recommendation, the U.S. Probation Office observed that Lita "owned a social club in New Jersey and from at least June 2018 through approximately December 2019, Lita took sports bets from his clients with his past employee[] Smail Djokic." *Id.* at 27. The U.S. Probation Office also noted that "[t]hese sports bets were part of a larger criminal enterprise which involved the operation of illegal gambling businesses, the transmission of wagering information on sporting events, and money laundering." *Id.* As for the profitability of this sports book and Lita's motive to break the law, "[l]edgers revealed that the gambling profits varied by month, but the Government estimated that Lita earned approximately $6,000 each month through his transmission of wagering information. . . . it appears that Lita's involvement in the instant offense was motivated by the real and anticipated financial gain." *Id.*

## II. DISCUSSION

### A. Applicable Law

As the court is aware, the Guidelines still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Indeed, although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense

3

and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7).  *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

>  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>  (B) to afford adequate deterrence to criminal conduct;
>  (C) to protect the public from further crimes of the defendant; and
>  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B.  A Guidelines Sentence Would Be Just and Appropriate

The Government respectfully submits that a sentence within the Stipulated Guidelines Range of 6 to 12 months' imprisonment, forfeiture of $111,704.94, and a fine within the applicable Guidelines range of $4,000 to $40,000 would be sufficient, but not greater than necessary, to serve the purposes of sentencing.

A Guidelines sentence is necessary to reflect the nature and circumstances of the offense and Lita's history and characteristics.  To be clear, unlike many of his co-defendants, Lita is not charged with being a member of the charged racketeering criminal enterprise headed by co-defendant Abduraman Iseni and nobody is suggesting that this is the crime of the century.  Still, as an operator of a social club in New Jersey that hosted a profitable sports gambling business with enough resources to pay a salaried employee to handle the day-to-day gambling business, Lita

4

played an important role in the charged conspiracy to transmit wagering information. Lita illegally sought to and did profit from unlawful activity carried out at a club that he operated. Rather than use his impressive professional skills, work ethic, and considerable financial resources to refrain from breaking the law and live a law-abiding life—as reflected in his decades-long work history as an accomplished food inspector and restauranteur who reported earning $135,000 per year as the proprietor of a French restaurant between 2001 and 2019, *see* PSR ¶ 79, with nearly $3 million in real estate holdings and approximately $18,750 in monthly rental income, *id.* ¶¶ 76, 85—Lita chose, instead, to commit a federal crime and collect the non-trivial profits from the unlawful gambling business at his social club. A Guidelines sentence is thus necessary to reflect the seriousness of the offense and to provide just punishment.

The need to ensure general deterrence also militates in favor of a Guidelines sentence. Regrettably, Lita's social club is just one of many illegal gambling parlors that operate in and around New York and New Jersey and generate real profits from these illegal activities. And while this investigation led to the arrest of many gambling club operators and the closure of their clubs, countless other clubs continue to operate. A Guidelines sentence is therefore necessary to send the appropriate message that individuals—even those like Lita without a prior criminal record and no direct involvement in Iseni's charged racketeering criminal enterprise—who become active and contributing members of these gambling conspiracies, will face a meaningful sentence of imprisonment. And the Government is mindful that a non-incarceratory sentence could risk minimizing Lita's criminal conduct and might wrongfully signal to others that doing the same thing to enrich themselves presents little risk beyond simply being asked to pay back their ill-gotten gains and serve a period of home incarceration.

For all these reasons, a sentence within the 6 to 12 months' Stipulated Guidelines Range, forfeiture of $111,704.94, and a fine within the applicable Guidelines range of $4,000 to $40,000 would adequately balance the various considerations under Section 3553(a) and achieve the statute's stated objectives. That is, such a sentence is needed to reflect the seriousness of Lita's conduct, deter Lita and others from future offenses, and promote respect for the law.

### III. CONCLUSION

For the reasons set forth above, the Government respectfully submits that a sentence within the Stipulated Guidelines Range of 6 to 12 months' imprisonment, forfeiture of $111,704.94, and a fine within the applicable Guidelines range of $4,000 to $40,000 would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Dated: New York, New York
January 25, 2022

Respectfully submitted,
DAMIAN WILLIAMS
United States Attorney

By: /s/ David R. Felton
Samuel L. Raymond
David R. Felton
Assistant United States Attorneys
(212) 637-6519 / 2299

cc:   John A. Azzarello, Esq. & William J. Muñoz, Esq. (by ECF)